**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **SIEMENS FINANCIAL SERVICES,** | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 14-00225-KD-N** |
| | ) | |
| **DELTA RADIOLOGY ASSOC., PLLC,** *et al.*,) | |
|     **Defendants.** | ) | |

**ORDER**

This matter is before the Court on Plaintiff Siemens Financial (Plaintiff)'s Rule 55(b) Motion for Entry of Default Judgment against Defendant Delta Radiology Associates, PLLC (Delta), and individual Defendant Jason R. Williams (Williams). (Doc. 23). Plaintiff seeks entry of a default judgment against these Defendants because they have failed to plead, answer or otherwise defend in this case.

## I.    Background

From December 2010 through August 2012, Plaintiff and Delta entered into certain leases (also called leasing schedules), personally guaranteed by Williams, through which Delta leased specific medical equipment from Plaintiff in connection with a December 8, 2010 Master Equipment Lease Agreement (Master Lease): 1) Lease 1--Leasing Schedule #20700-16317 (contract #130-0002825-000) and Lease 1 Guaranty; 2) Lease 2--Leasing Schedule #20701-16318 (contract #110-0001996-000) and Lease 2 Guaranty; 3) Lease 3--Leasing Schedule #20917-17814 (contract #110-0002038-000) and Lease 3 Guaranty; 4) Lease 4--Leasing Schedule #222058-30180 (contract #121-0000201-000) and Lease 4 Guaranty; and 5) Lease 5--Leasing Schedule #21938-30004 (contract #130-0003060-000) and Lease 5 Guaranty. (Doc. 23; Doc. 23-1 at 12-67 (leases and guaranties); Doc. 23-1 (Decltn. Petrone at 2-10)).

Plaintiff accepted and relied upon the Guaranties, and in consideration for the Guaranties, entered into the Leases with Delta.  (Id.)   Each of the Leases required Delta to make monthly rental payments to Plaintiff for the equipment leased.  (Id.)   However, Delta defaulted under its Lease obligations by failing to pay the amounts due and owing to Plaintiff when those amounts were due. (Id.)   Given the default, Plaintiff exercised its right to declare the following amounts immediately due and payable: 1) for Leases 1, 2 and 3, the applicable Stipulated Loss Value of the medical equipment leased, together with all past due and unpaid Lease Payments and all other amounts due under these Leases; and 2) for Leases 4 and 5, all remaining lease payments for the balance of the lease term plus the Purchase Option Price stated in these Leases, such sum discounted in accordance with these Leases, plus all past due and unpaid lease payments and all other amounts due under these Leases.  (Id.)

On February 6, 2014, Plaintiff demanded that Delta pay all accelerated amounts due under the Leases and return the Leased Equipment to Plaintiff as provided for in the Leases. (Doc. 23; Doc. 23-1 at 12-67 (leases and guaranties); Doc. 23-1 (Decltn. Petrone at 2-10)). Delta failed to pay the amounts demanded.  (Id.)   Upon Delta's default, the Guaranties allow Plaintiff to also proceed against Williams, individually, for all amounts due from Delta to Plaintiff under the Leases.  (Id.)   As such, also on February 6th, Plaintiff demanded Williams pay all amounts due to Plaintiff under the Leases and the Guaranties.  (Id.)   Williams failed to pay the amounts demanded.  (Id.)   As a result of Delta's defaults on its obligations to Plaintiff under the Leases, and pursuant to the terms of the Guaranties, Delta and Williams are liable to Plaintiff, jointly and severally, for 100% of all amounts due to Plaintiff under the Leases.  (Id.)

Plaintiff removed and then sold the Leased Equipment in accordance with the terms of the Leases and applied the net sales proceeds to the amounts due from Delta under the Leases.

(Doc. 23; Doc. 23-1 at 12-67 (leases and guaranties); Doc. 23-1 (Decltn. Petrone)).   As of March 27, 2015, and after giving credit for the net sale proceeds, the amount due and owing by Delta to Plaintiff pursuant to the Leases is no less than **$2,567,253.06**, exclusive of attorneys' fees and costs, consisting of the following: $1,605,990.20 --Lease 1; $730,165.33 --Lease 2; $59,478.72 --Lease 3; $29,614.21 --Lease 4; and $141,004.40 --Lease 5.   (Doc. 23-1 (Decltn. Petrone); Doc. 23-1 at 75-80).   Additionally, for each day after March 27, 2015, late charges accrue as follows: $609.09 -- Lease 1; $306.61 -- Lease 2; $22.46 -- Lease 3; $11.23 -- Lease 4; and $53.48 -- Lease 5.   (Id.)   Plaintiff contends that per the Leases' terms, Delta is obligated to pay all costs, including reasonable attorneys' fees and amounts incurred removing, marketing, and selling the equipment, as incurred in the enforcement of the Leases.   (Id.)

Plaintiff asserts that as of March 31, 2015, it has incurred **$57,590.79** in attorneys' fees and costs enforcing its rights and remedies under the Leases. (Doc. 23; Doc. 23-1 (Decltn. Petrone); Doc. 23-2 (Decltn. Jackson); Doc. 23-3 (Aff. Callaway)). Plaintiff also seeks **$15,000 more** in attorneys' fees to cover "estimated future" such fees and costs.   (Doc. 23).

On May 20, 2014, Plaintiff filed a 10 count Complaint against Delta and Williams for the breaches of the five (5) leases and five (5) guaranties.   (Doc. 1).   On March 24, 2015, a Clerk's entry of default was issued against Delta and Williams for failure to plead or otherwise defend the case.   (Doc. 20).   Plaintiff now moves for entry of a default judgment, submitting the Declaration of O'Neil Petrone, Declaration of Daniel P. Jackson, and Affidavit of Henry A. Callaway, in support.   (Docs. 23-1, 23-2, 23-3).   Plaintiff seeks a default judgment against the Defendants in the amount of **$2,567,253.06, plus** the amounts due under the Leases, **late charges** in the amount of **$1,002.87/day** after March 27, 2015 through entry of judgment, **post-judgment interest** at the applicable rate, and **$72,590.79** in **attorneys' fees, costs** and

**expenses**.

## II.    **Standard of Review**

The <u>Federal Rules of Civil Procedure</u> establish a two-part process for obtaining a default judgment.    Fed.R.Civ.P. 55.    If "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."    Fed.R.Civ.P. 55(a).    After default has been entered, if the "claim is for a sum certain or a sum that can be made certain by computation" the clerk must enter default judgment.    Fed.R.Civ.P. 55(b)(1).    In all other circumstances, such as here, "the party must apply to the court for a default judgment." Fed.R.Civ.P. 55(b)(2).

Rule 55(b)(2) of the <u>Federal Rules of Civil Procedure</u> provides, in relevant part, as follows with regard to entering a default judgment:

> (b) Entering a Default Judgment.
> * * *
> ***(2) By the Court.*** In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:
>
> > (A) conduct an accounting;
> > (B) determine the amount of damages;
> > (C) establish the truth of any allegation by evidence; or
> > (D) investigate any other matter.

FED.R.CIV.P. 55(b)(2).

The Eleventh Circuit has held that although "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover, a defaulted

defendant is deemed to admit the plaintiff's well-pleaded allegations of fact. The defendant, however, is not held to admit facts that are not well-pleaded or to admit conclusions of law." Tyco Fire & Sec., LLC v. Alcocer, 218 Fed. Appx. 860, 863 (11th Cir. 2007) (*per curiam*) (citations and internal quotations omitted).   Moreover, "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations of the complaint ... actually state a cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought."   Id. (emphasis omitted).   Therefore, Plaintiff must establish a "prima facie liability case" against the defendants.   Pitts ex rel. Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353, 1357 (S.D. Ga. 2004) (citations omitted).   Further, when assessing damages, the Court has "an obligation to assure that there is a legitimate basis for any damage award it enters." Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003).   Overall, "there is a strong policy of determining cases on their merits" and therefore defaults are viewed "with disfavor."   In re Worldwide Web Sys., Inc., 328 F.3d 1291, 1295 (11th Cir. 2003).   "Since this case involves a default judgment there must be strict compliance with the legal prerequisites establishing the court's power to render the judgment."   Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. and Canada, 674 F.2d 1365, 1369 (11th Cir. 1982).   Finally, "allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." Miller v. Paradise of Port Richey, Inc., 75 F.Supp.2d 1342, 1346 (M.D. Fla. 1999).

## III.   **Discussion**

## A.   **Liability**

At the outset, the Court is satisfied that Plaintiff has extensively pursued sufficient legal avenues to endeavor to effect proper service on both Delta and/or Williams, including service via

publication in newspapers of general circulation and service via the Mississippi Secretary of State's office per Miss. Code § 79-35-13, based on defendants' apparent avoidance of service. (Docs. 16, 17).   Additionally, a Clerk's entry of default was issued against the Defendants in accordance with Rule 55(a) for failure to plead, answer or otherwise defend this case.   (Doc. 20).   And while the undersigned typically requires evidence that the defendants against whom a default is sought be provided with notice of the default proceedings against them, the record indicates that the Defendants have been avoiding service and as such, there does not appear to be any way for such notice to be provided (*e.g.*, a certificate of service issued to the defendants' addresses set forth in the initial Summons would be essentially ineffective or futile).   See e.g., Doc. 22 (Clerk's Entry of Default returned as undeliverable to the Court).   Nevertheless, Defendants were served with process via newspaper publication newspaper and the Mississippi Secretary of State.   (Docs. 11, 12, 18).   Given the unique circumstances of this case, the Court finds that no further notice of default proceedings to the defendants is necessary.

Moreover, a hearing is not necessary because Plaintiff seeks a sum certain *ascertainable* from the submitted Declarations, Affidavit, leases, and guaranties, and the allegations in the Complaint.   Securities and Exchange Commission v. Smyth, 420 F.3d 1225, 1231-1232 (11th Cir. 2005) ("Judgment of default awarding cash damages could not properly be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation) (internal quotes and citations omitted); Id. at n.13 (noting that an "evidentiary hearing is not a per se requirement; indeed, Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone....We have held that no such hearing is required where all essential evidence is already of record[]").

Further, as to the merits of Plaintiff's complaint, a court may enter a default judgment

only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for such entry. Nishimatsu Const. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law[]"). In considering a motion for default judgment, a court must "examine the sufficiency of plaintiff's allegations to determine whether the plaintiff is entitled to" a default judgment. Fidelity & Deposit Co. v. Williams, 699 F. Supp. 897, 899 (N.D. Ga. 1988). The Court is satisfied that the well-pleaded allegations of the Complaint state a basis for relief as to the claims asserted and that there is a substantive, sufficient basis for the relief Plaintiff seeks.

Specifically, Plaintiff asserts 10 counts in the complaint against defendants for Delta and Williams' respective breaches of the leases and guaranties due to default (non-payment). As alleged, between December 2010 and August 2012, Plaintiff and Delta entered into certain leases personally guaranteed by Williams, through which Delta leased specific medical equipment from Plaintiff, in connection with a December 8, 2010 Master Lease: 1) Lease 1--Leasing Schedule #20700-16317 (contract #130-0002825-000) and Lease 1 Guaranty; 2) Lease 2--Leasing Schedule #20701-16318 (contract #110-0001996-000) and Lease 2 Guaranty; 3) Lease 3--Leasing Schedule #20917-17814 (contract #110-0002038-000) and Lease 3 Guaranty; 4) Lease 4--Leasing Schedule #222058-30180 (contract #121-0000201-000) and Lease 4 Guaranty; and 5) Lease 5--Leasing Schedule #21938-30004 (contract #130-0003060-000) and Lease 5 Guaranty. (Doc. 1; Doc. 23; Doc. 23-1 at 12-67 (leases and guaranties); Doc. 23-1 (Decltn. Petrone at 2-10)). All relevant documents are governed by New Jersey law.[1]

---

1  The Master Lease provides that New Jersey law governs any and all disputes concerning the leases:

15. MISCELLANEOUS….THE AGREEMENT ANDTHE LEASE SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH **THE LAWS OF THE STATE OF NEW JERSEY** WITHOUT GIVING EFFECT TO THE PRINCIPLES OF CONFLICT OF LAWS THEREOF….

(Doc. 1-1 at 12 (The Master Lease Agreement (emphasis added)). These leases provide that Middlesex, New

1.    **Breach of contract against Delta: Counts One through Five**

Under New Jersey law, to establish breach of contract, a plaintiff must show: 1) the existence of a contract between the parties; 2) breach of that contract; 3) damages flowing from the breach; and 4) that plaintiff performed its own contractual obligations.   Frederico v. Home Depot, 507 F.3d 188, 203 (3rd Cir. 2007); Crescent Trading, LLC v. Chera, 2010 WL 3932892, *7 (N.J. Super. A.D. 2010). "Failure of a party to an agreement to perform a contractual obligation constitutes a breach of the contract.   Franconia Assocs. v. United States, 536 U.S. 129, 142-43…(2002) ('Failure by the promisor to perform at the time indicated for performance in the contract establishes an immediate breach[]'); Looman Realty Corp. v. Broad St. Nat'l Bank of Trenton,…180 A.2d 524 (App. Div.) (noting that "in law an action for breach of contract is founded upon a mere nonperformance"); RESTATEMENT (SECOND) OF CONTRACTS § 235(2) (1979) ('When performance of a duty under a contract is due any non-performance is a breach.').

---

Jersey is the court of jurisdiction for all actions/proceeding relating to the leases:

> 15.  MISCELLANEOUS……LESSOR AND LESSEE AGREE THAT ALL ACTIONS OR PROCEEDINGS RELATING DIRECTLY OR INDIRECTLY TO THE LEASE AND THE TRANSACTION CONTEMPLATED HEREBY MAY BE LITIGATED IN **THE FEDERAL, STATE OR LOCAL COURTS SITTING IN OR FOR THE COUNTY OF MIDDLESEX, NEW JERSEY,** AND…SUBMIT TO THE NON-EXCLUSIVE JURISDICTION OF SUCH COURTS ….

(Docs. 1-1 at 3, 16, 23, 31, 38 (Leases 1, 2, 3, 4, 5) (emphasis added).   Moreover, the personal guaranties provide that the law of the State of New Jersey governs all legal rights and obligations:

> ….LEGAL RIGHTS AND OBLIGATIONS HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH **THE LAWS OF THE STATE OF NEW JERSEY,** WITHOUT GIVING EFFECT TO THE PRINCIPLES OF CONFLICT OF LAWS THEREOF. GUARANTORS ACKNOWLEDGE THAT THIS GUARANTY AND THE CONTRACT ARE INTEGRAL AGREEMENTS TO AN OVERALL TRANSACTION.  ACCORDINGLY, GUARANTORS AGREE TO BE BOUND BY THE TERMS OF THE FORUM SELECTION CLAUSE IN THE CONTRACT, AND FURTHER AGREE THAT ALL ACTIONS AND PROCEEDINGS RELATING DIRECTLY OR INDIRECTLY TO THIS GUARANTY AND/OR THE TRANSACTION CONTEMPLATED HEREIN MAY BE LITIGATED IN ANY FEDERAL, STATE OR LOCAL COURT (a) SITTING IN OR FOR **THE COUNTY OF MIDDLESEX NEW JERSEY AND/OR (b) IN WHICH JURISDICTION IS PROPER OVER THE CUSTOMER,** AND GUARNATORS HERBY CONSENT AND SUBMIT TO THE NON-EXCLUSIVE JURISDICTION OF ANY SUCH COURTS….

(Doc. 1-1 at 52, 56, 59 (emphasis added)).

Indeed, when a 'lessor or lessee fails to perform a covenant on his part to do or refrain from doing a stipulated thing, the injured party may maintain an action for the breach' of contract. Cohen v. Wozniak,…85 A.2d 9 (Ch. Div. 1951) (citations omitted)."   Crescent Trading, 2010 WL 3932892, *7 (some internal citations omitted).

As to the first element, Plaintiff submitted a copy of the Master Lease (Doc. 23-1 at 19-23), evidencing a contract existed with Delta.   The Master Lease provides, in relevant part, as follows regarding default, interest, late charges, attorneys' fess and costs/expenses:

***

**2. TERM AND LEASE PAYMENTS:**…..Lessee agrees to pay on demand, as a late charge, 1.3% per month, limited by the maximum rate permitted by law, of each overdue amount (including accelerated balances) under the Lease, whether such amount is due or not due after a Default….

**9. DEFAULT AND REMEDIES: (a)** Any one or more of the following shall constitute a default by Lessee under the Lease….(i) failure by lessee to pay any amounts under the Lease when due and such remains unremedied for a period of ten (10) days from the due date thereof, or (ii)…failure by Lessee to comply with any other provisions or perform any of its other obligations arising under the Lease or under any other documents or agreements relating to the Lease, and such remains unremedied by Lessee for a period of twenty (20) days, or…..or (vii) a default by an Obligor under any Lease, guaranty or other agreement or note with Lessor, or with any assignee of the Lease, or under any agreement with any other party that Lessor's sole opinion is a material agreement….

**(b)** Upon the occurrence of any Default, Lessor may exercise any one or more of the following remedies (which remedies shall be cumulative, and may be exercised simultaneously, in each case to the extent permitted by law) (i) cancel or terminate the Lease and/or any unfunded commitments or proposals to Lessee, whether related to the Lease or otherwise, (ii) secure peaceable repossession and removal of the Equipment by Lessor or its agent without judicial process, (iii) demand and Lessee shall return the Equipment to Lessor in accordance with Section 11 hereof, (iv) sell, lease or otherwise dispose of the Equipment at public or private sale without advertisement or notice except that required by law, upon such terms and at such place as Lessor may deem advisable, and Lessor may be the purchaser at any such sale (if any such notice is required, Lessor and Lessee agree that ten (10) days notice shall be deemed to be commercially reasonable), (v) demand and Lessee shall pay all expenses in connection with the Equipment relating to its retaking, refurbishing, selling, leasing or the like, and (vi) exercise any other right or remedy which may be available to it under the Uniform Commercial Code ("UCC") or any other applicable law.   To the extent permitted by applicable law, Lessee waives all rights it may have to limit or modify any of Lessor's

9

rights and remedies hereunder, including but not limited to, any right of Lessee to require Lessor to dispose of or marshal the Equipment or otherwise mitigate its damages hereunder.

**(c)** If Option A has been selected, Lessor may exercise the following remedy, as provided herein, in addition to the remedies set forth in Section 9(b) above (which remedies shall be cumulative, and may be exercised simultaneously, in each case to the extent permitted by law).   By notice to Lessee, as liquidated damages for loss of a bargain and not as a penalty, declare the Stipulated Loss Value of the Equipment calculated for the Payment Period Immediately following the date of such notice immediately due and payable, together with (i) all past due and unpaid Lease Payments through such Payment Period, and (ii) all other amounts due and unpaid under the Lease (including late charges), whereupon such shall become immediately due and payable.   In the event, however, that no Stipulated Loss Value Schedule was included in the transaction, Lessor may, alternatively, declare all remaining Lease Payments for the balance of the Lease Term discounted at a per annum rate of five percent (5%), together with any loss or damage to Lessor's residual interest in the Equipment pursuant to Section 2A-532 of the UCC, plus all past due and unpaid lease Payments and all other amounts due and unpaid under the Lease (including late charges), immediately due and payable in full, whereupon such shall become immediately due and payable…..

***

**….15. MISCELLANEOUS**:….In the event that Lessee falls to meet any of its obligations under the Lease, Lessor may at its option satisfy any of such obligations and Lessee shall, upon demand, reimburse Lessor for all costs…together with interest thereon at the late charge rate specified above. In the event that legal or other action is required to enforce Lessor's rights under the Lease (including the exercise of remedies under Section 9 hereof), Lessee agrees to reimburse Lessor on demand for its reasonable attorneys' fees and its other related costs and expenses, (whether incurred prior to or after judgment)…If Option A…has been selected, Lessor and Lessee agree that (i) the Lease is a "finance lease" as that term is defined in Article 2A of the UCC, and (ii) Lessor shall be entitled to all the benefits applicable to a transaction that qualifies as a finance lease under Article 2A of the UCC.   **THE AGREEMENT AND THE LEASE SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW JERSEY WITHOUT GIVING EFFECT TO THE PRINCIPLES OF CONFLICT OF LAWS THEREOF.**

***

(Doc. 23-1 at 19, 21, 22 (Sections 2, 9, 15) (emphasis in original)). Additionally, Plaintiff

submitted copies of the five (5) related leases (also referenced as leasing schedules), which show

that contracts existed with Delta, which stem from the Master Lease.   (Doc. 23-1 at 25-48).[2]

None of these leases (leasing schedules) provide for default, interest, late charges, attorneys' fess

or costs/expenses; instead, they refer to and rely upon the terms of the Master Lease, pursuant to

---

2  Within these leases Delta chose "Option A"—Fair Market Value Purchase Option.

which they were executed.

Regarding the remaining elements of breach of contract under New Jersey law, the Court finds as follows. Plaintiff has sufficiently alleged breaches of the Master Lease and leases due to Delta's defaults for its failure to pay the amounts due/owing per those contracts' terms.   Delta has failed to appear and thus there is no dispute before the Court as to its breaches/defaults.   As for damages, Plaintiff notified Delta of its defaults and demanded in writing payment of the amounts due. Delta failed to pay Plaintiff what was owed.   Plaintiff thus invoked its rights to recovery under the terms of the Master Lease and leases, indicating the damages it has sustained. As to Plaintiff's performance, there is no evidence of its failure to perform its obligations under the Master Lease or leases, and Plaintiff asserts that it fully performed same.   Upon consideration of the foregoing, the Court finds that Plaintiff is entitled to a default judgment against Delta for the breaches of the Master Lease and equipment leases (Counts One through Five) as a matter of New Jersey law.

2.   **Breach of guaranty against Williams (Counts Six through Ten)**

To establish a claim for breach of a guaranty under New Jersey law, a plaintiff must show: 1) execution of the guaranty by the defendant; 2) the principal obligation and terms of the guaranty; 3) lender's reliance on the guaranty; 4) default; 5) written demand for payment on the guarantor; and 6) failure of guarantor to pay upon written demand.   United States v. DelGuercio, 818 F.Supp. 725, 727–728 (D.N.J. 1993).   Plaintiff submitted copies of the five (5) guaranties which show their execution between Plaintiff and Williams (by Williams, in order to guaranty Delta's obligations under the leases and Master Lease), and which were executed pursuant to the Master Lease and leases.   (Doc. 23-1 at 50-67).   The guaranties provide, in relevant part, as follows as to the extent of the guaranties, performance, default, expenses, costs,

and reasonable attorneys' fees:

***

> For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and in order to induce SFS to enter into the Contract and/or to grant certain financial or other accommodations related to the Contract, the undersigned guarantors (herein "Guarantors") jointly and severally unconditionally guarantee to SFS, the full and prompt payment and performance by Customer of the Guaranteed Obligations.

> Guarantor acknowledge that their liability hereunder is several, independent and separate from the obligations and liabilities of any other guarantor.   Guarantors agree that it shall not be necessary as a condition to enforce this Guaranty that suit first be instituted against Customer or that any rights or remedies against Customer first be exhausted, it being agreed that the liability of Guarantors hereunder shall be primary, direct, and in all respects unconditional.   Guarantors agree that if the maturity of any of the Guaranteed Obligations is accelerated, by default or otherwise, such shall also be deemed accelerated for the purpose of this Guaranty, and without demand upon or notice to Guarantors…..

***

> …This Guaranty and the obligations of Guarantors hereunder shall continue in full force and effect until the Guaranteed Obligations shall have been indefeasibly paid or otherwise performed in full. Guarantors shall reimburse SFS on demand for all expenses incurred by it in the enforcement or attempted enforcement of any of its rights against Customer and Guarantors (including costs and reasonable attorneys' fees)….

***

(Doc. 23-1 at 50-67).

As to the elements for breach of guaranty, the Court finds as follows. The evidence shows execution of the guaranties with Plaintiff by Williams.   The guaranties explain Williams' principal obligation and terms of the guaranties themselves.   Plaintiff also relied on the guaranties.   The evidence indicates that Williams defaulted under the guaranties due to his failure to pay the sums due and owing under the Master Lease and leases.   Plaintiff further made written demand for payment on the guarantor, Williams, yet he failed to pay what was due/owing.   Moreover, Plaintiff's reliance on the guaranties is clearly expressed in the documents themselves, which provide that the guaranties are intended "in order to induce SFS [Plaintiff] to enter into the Contract and/or to grant certain financial or other accommodations related to the Contract[]" (meaning the Master Lease and leases for the medical equipment).

12

Upon consideration of the foregoing, the Court finds that Plaintiff is entitled to default judgment against Williams under the guaranties (Counts Six through 10) as a matter of New Jersey law.

**B.**     **Damages**

Plaintiff requests – "after giving credit for the Net sale Proceeds" -- entry of a final default judgment against the Defendants in the amount of **$2,567,253.06** due under the Leases, ***plus*** late charges in the amount of **$1,002.87/day** through entry of judgment ***and*** post-judgment interest at the applicable rate. Specifically, Plaintiff seeks the following (with late charges continuing to accrue) in addition to post-judgment interest: 1) Lease 1 -- $1,605,990.20 plus $609.09 in late charges; 2) Lease 2 -- $730,165.33 plus $306.61 in late charges; 3) Lease 3 -- $59,478.72 plus $22.46 in late charges; 4) Lease 4 -- $29,614.21 plus $11.23 in late charges; and 5) Lease 5 -- $141,004.40 plus $53.48 in late charges. (Doc. 23-1 (Decltn. Petrone and Ex. N thereto)). Upon review of the Master Lease, leases and guaranties, calculations submitted and Declaration filed in support, the Court is satisfied that the amounts requested are due and owing to Plaintiff by defendants. As such, that portion of Plaintiff's motion for entry of default judgment damages, addressing the breach of contract and breach of guaranty claims, is **GRANTED** such that Plaintiff is awarded $**2,567,253.06**. Plaintiff also seeks an accrued late charge of **$1,002.87/day** through entry of judgment, which is also awarded. As for Plaintiff's request for post-judgment interest, such is further awarded at the applicable rate.

**C.**     **Attorneys' Fees & Costs/Expenses**

Plaintiff seeks recovery of **$72,590.79** in reasonable attorneys' fees and costs/expenses, plus **$15,000** for *future* fees and costs/expenses (for post-judgment collection work), for the law firms of Vedder Price and Hand Arendall, per the Declaration of O'Neil Petrone, Declaration of Daniel P. Jackson, and Affidavit of Henry A. Callaway, filed in support. (Doc. 23; Doc. 23-1

(Decltn. Petrone); Doc. 23-2 (Decltn. Jackson); Doc. 23-3 (Aff. Callaway)).

The Court is unable to assess fees and costs/expenses at this juncture and thus is not presented with a "sum certain" from which to completely resolve the motion for default judgment.   Plaintiff has not provided any supporting documentation regarding its request for attorneys' fees and costs/expenses, or referenced that portion of the Master Lease, leases and/or guaranties which provide for recovery of same.   Likewise, Plaintiff has not provided any attorneys' billing records, invoices and/or itemized statements, complete information about all of the individuals who billed for legal services or their qualifications/years of experience, and/or whether the fees and costs were reasonably incurred under the relevant state's law (New Jersey) governing such awards.   Moreover, Plaintiff seeks to recover an additional **$15,000** in *future* attorneys' fees and costs/expenses without providing any legal basis for such recovery (whether under the relevant contracts or under New Jersey law).

As such, the Court **RESERVES RULING** on this request and Plaintiff is **ORDERED** to file, on or before **May 11, 2015**, a Supplement to its motion addressing the items noted above, and further: 1) citing those provisions in the Master Lease, leases, and guaranties which provide for recovery of fees and costs/expenses, and assessing the propriety of recovery of same under New Jersey law; 2) attaching whatever materials it deems necessary and appropriate to support its claim for fees and costs/expenses in conjunction with New Jersey law and; and 3) explaining the propriety of recovery of future (not yet incurred) fees and costs/expenses under New Jersey law and citing the relevant portions of the contracts providing for same.[3]

IV.   **Conclusion**

Accordingly, Plaintiff's motion for default judgment is **GRANTED in part** insofar as a

---

[3] The Court notes that.   It is recommended that Plaintiff also identify such specific portions in the Supplement.

default judgment is entered in its favor and against Defendants concerning the 10 counts in the Complaint in the amount of **2,567,253.06**, ***plus*** late charges in the amount of **$1,002.87/day** through entry of judgment ***and*** post-judgment interest at the applicable rate, but **RESERVE RULING in part** with regard the request for attorneys' fees and costs/expenses.

Plaintiff has been given leave to Supplement this portion of its motion such that this Court will fully resolve the motion for default judgment after receipt and review of said Supplement, entering a "sum certain" as well as a final judgment, at that time.

**DONE** and **ORDERED** this the **4**[th] day of **May 2015.**

_s/Kristi K. DuBose_____
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**